FRANKLIN SAVINGS BANK *vs.* JOHN COCHRANE, JR.

Suffolk.    January 20, 1903. — February 25, 1903.

Present: KNOWLTON, C. J., MORTON, LORING, & BRALEY, JJ.

*Corporation.    Agency.    Surety.    Estoppel.*

On the issue whether a corporation was bound by certain extensions, executed in its behalf by its treasurer, of a mortgage note which it had assumed and agreed to pay, it appeared, that although the by-laws directed that meetings of the directors should be held at least monthly, they were held only at irregular intervals, and there was no record of any meeting between a day in September, 1893, and a day in February, 1898, that the treasurer attended to the actual management of all the financial affairs of the company including the making and extending of notes " as the necessities of the business required ", that the company stopped active business in 1898, and after that the treasurer attended to all its business affairs.    *Held,* that this evidence warranted a finding that the directors knew that the treasurer was undertaking to act for the corporation in all financial matters requiring action, and acquiesced therein, and that on this ground the corporation was bound by extensions made by the treasurer in April, 1892, as well as by others made by him in March, 1895.

In an action against the maker of a mortgage note, it appeared, that a certain corporation, of which the defendant was a director, purchased the equity of redemption, assumed the mortgage debt and agreed with the mortgagee to pay it, making the liability of the defendant that of a surety, that thereafter the treasurer of the corporation acting in its behalf by agreement with the mortgagee made an extension of the note without the knowledge of the defendant, but that the defendant as a director of the corporation acquiesced in allowing the treasurer to act for the corporation in all financial matters including the extension of notes.    *Held,* that by holding out the treasurer as having authority to act for the corporation, the defendant was not precluded from asserting his ignorance of the agreement of extension, and his consequent discharge from liability on the note.

CONTRACT against the maker of a promissory note for a balance alleged to be due after a foreclosure sale and application of the proceeds.    Writ dated November 27, 1899.

The defence set up and relied upon was, that the defendant had sold the mortgaged property to the Cochrane Carpet Company, which had assumed and agreed to pay the note and discharge the mortgage, and that subsequently without the knowledge or consent of the defendant, the plaintiff made an agreement with the carpet company extending the note, and thereafter a further extension, whereby the defendant was discharged from liability.

In the Superior Court the case was tried before *Bishop*, J., without a jury. He found that the extensions were duly executed and entered into, and were without the assent or knowledge of the defendant, and that they were executed and entered into after notice to the plaintiff that the property had been sold to the Cochrane Carpet Company and that it had assumed the mortgage ; and ruled that the extensions operated to discharge the defendant from liability.

The judge found for the defendant; and the plaintiff alleged exceptions, raising questions which are stated by the court.

*H. Wheeler*, for the plaintiff.

*E. R. Thayer*, for the defendant.

LORING, J. The first contention of the plaintiff in this case is that the execution of the extensions of the mortgage made by and between the plaintiff savings bank the mortgagee and the Cochrane Carpet Company, the grantee of the equity of redemption, did not operate to discharge the maker of the mortgage note even though they were duly executed and were made without his consent.

The ground on which this contention is made is that by the assumption of the mortgage debt in the conveyance of the mortgaged property to it, the Cochrane Carpet Company did not become liable as between it and the plaintiff to pay the debt, and for that reason an agreement between it and the carpet company was not an agreement giving time to the principal debtor. But without going further, it is enough to dispose of that contention that by the first extension the carpet company did agree with the plaintiff to pay the mortgage debt, and by the second extension time was given to it, the principal debtor.

The second contention is that the evidence did not warrant a finding that the carpet company was bound by the two extensions executed in its behalf by its treasurer. We think that it did.

It appeared in evidence that although the by-laws provided that meetings of the directors should be held at least monthly, they were held only at irregular intervals, and "there was no record of any meeting held between September 25, 1893, and February 16, 1898." It further appeared that the treasurer attended to the actual management of the financial and fiscal

affairs of the company, and to all financial matters, and that " with reference to making and extending notes . . . he made them and extended them as the necessities of the business required." The company stopped active business in 1893, and after that the treasurer attended to all its business affairs. This evidence warranted a finding that the directors knew that the treasurer was undertaking to act for the corporation in all financial matters requiring action, and acquiesced therein, and on that ground that the corporation was bound by the extensions made on April 11, 1892, as well as by that made March 28, 1895. *Lester* v. *Webb*, 1 Allen, 34. *Holden* v. *Upton*, 134 Mass. 177, 180. *McNeil* v. *Boston Chamber of Commerce*, 154 Mass. 277, 285.

The plaintiff's last contention and the only one seriously insisted upon at the argument, is that the defendant, having as one of the directors left to the treasurer the conduct of its affairs, is bound by his acts and cannot escape from the position of having consented to what the treasurer did.

It was held in *Polak* v. *Everett*, 1 Q. B. D. 669, *Lambert* v. *Shetler*, 71 Iowa, 463, and *Edwards* v. *Coleman*, 6 T. B. Mon. 567, that it is not enough that a surety knows of a binding agreement between the creditor and the principal debtor amounting to a variation of the original contract. He must not only know but must consent. In *Woodcock* v. *Oxford & Worcester Railway*, 1 Drew. 521, it was held that the fact that the surety as solicitor for the principal debtor drew the agreement which was relied on as the variation of the original contract was a sufficient concurrence to bar the surety's being discharged. And in *Polak* v. *Everett*, 1 Q. B. D. 669, more fully reported in this connection in 45 L. J. (N. S.) Q. B. 369, and 34 L. T. (N. S.) 128, it appeared that the variation of the contract between the principal debtor and the creditor which constituted the variation consisted in the sale of certain book debts by the debtor and creditor to a joint stock company, of which the surety was not only a director but also the chairman of the board. It appeared that he was present at the meeting at which the joint stock company voted to buy the accounts, but that he did not consent to the bargain ; see 34 L. T. (N. S.) 128, 129 ; that he signed the minutes of the meeting but " protested against it as adverse to his interests,"

and gave no warning to the creditor. See 45 L. J. (N. S.) Q. B. 369, 371.

*Swire* v. *Redman,* 1 Q. B. D. 536, relied on by the plaintiff, was not decided on the ground that there was a consent in that case, but on the ground that where the debtors were originally liable as principals they could not make him a surety by a subsequent agreement of which the creditor had knowledge but to which he did not assent; and the case was overruled by *Rouse* v. *Bradford Banking Co.* [1894] A. C. 586. The case of *Oakford* v. *European & American Steam Shipping Co.* 1 Hem. & M. 182, also relied on by the plaintiff, went on the ground that where one partner retires under an indemnity from the remaining partners, who assume the assets and agree to conduct the business, and one of the assets is a continuing contract, the remaining partners are the agents of the retiring partner to act under the contract. The other case relied on by the plaintiff, *Strafford Bank* v. *Crosby,* 8 Greenl. 191, is a case of "mere delay to prosecute the principal." See p. 194.

In the case at bar, it is found as a fact that the defendant did not know of the extensions made by the carpet company; and, in our opinion, when the defendant as a director of the carpet company allowed the treasurer to take such action in behalf of the corporation as he thought the interests of the corporation demanded, he did not thereby put himself in the position of having consented, with regard to his personal and individual interests, to any and all acts of the corporation which the treasurer did in its behalf and of which he was ignorant. By his acquiescense he has held out the treasurer as having authority to act for the corporation, but he has not put himself in a position where he cannot say he was ignorant of the agreement made by the corporation in pursuance of that ostensible authority, and has not given his consent thereto, so far as his personal interests are concerned.

*Exceptions overruled.*