PEOPLES NATIONAL BANK OF BOSTON *vs.* NEW ENGLAND
HOME FOR DEAF MUTES, AGED, BLIND AND INFIRM.

Suffolk.   March 14, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Corporation*, Officers.   *Bills and Notes.*

The president and the treasurer of a charitable corporation have no power, without
special authority, to make a promissory note in the name and behalf of the
corporation.

A charitable corporation bought a parcel of real estate, and its trustees passed a
vote purporting to authorize the president and treasurer to " execute and sign
the necessary papers." The by-laws of the corporation required the presence
of two thirds of the whole number of trustees to authorize the purchase and sale
of real estate, and only eight of the fifteen trustees were present when the vote
was passed. A fraudulent agent acted for the corporation in negotiating a
purchase of the real estate, which was paid for and was conveyed to the cor-
poration. He falsely represented the price to be $2,000 more than it was,
and agreed to lend this sum of money to the corporation to complete the pur-
chase. For this pretended loan the president and the treasurer executed a note
for that amount purporting to be a note of the corporation, which the fraud-
ulent agent assigned to a bank as security for a note of his own. The officers
of the corporation did not ascertain the facts until long after the transaction
was completed and the corporation had entered into possession of the real estate.
In an action by the bank against the corporation on the note, it was *held*, that,
assuming the plaintiff to be a holder in due course, so that the defenses that the
note was obtained by fraud and that it was without consideration were not open,
the defense that the note was not made by the defendant because executed with-
out authority was good, unless the transaction had been ratified, and that it had
not been ratified, because the retention of the real estate, although a ratification
of the purchase, was not a ratification of the action of the president and treas-
urer in giving to the fraudulent agent a note which was not a part of the actual
purchase of the property.

CONTRACT on a promissory note, executed in the name of the
defendant, a charitable corporation organized under R. L. c. 125,
and assigned to the plaintiff by the payee, one Mitchell, together
with the assignment of an alleged mortgage securing it, as secur-
ity for a note of Mitchell to the plaintiff for the same amount.
Writ dated June 5, 1908.

The note sued upon was as follows:

Secured by mortgage of real estate in Everett to be recorded in Middlesex Registry of Deeds.

" $2,000.                                BOSTON, Nov. 8, 1905.

For value received, The New England Home for deaf mutes, aged, blind or infirm, promise to pay to William F. Mitchell or order, the sum of Two Thousand dollars No/100 in 1 year (1) from this date, with interest to be paid semi-annually at the rate of three (3) per centum per annum during said term, and for such further time as said principal sum or any part thereof shall remain unpaid.

Signed in presence        New England Home for Deaf
of :                                   Mutes, Aged, Blind or Infirm,
Archibald MacLean.   By John Dixwell, M.D.,
                                                          President,
                                   and Heber Bishop, Treasurer."

Indorsement on back :
" William F. Mitchell."

In the Superior Court the case was tried before *Dana*, J. The facts shown by the evidence are stated in the opinion. The judge ordered a verdict for the defendant, and, at the request of the plaintiff, reported the case for determination by this court. If the ruling of the judge was right, judgment was to be entered on the verdict. If his ruling was wrong and if this court should be of the opinion that there was sufficient evidence upon which the jury could find that the plaintiff was not a *bona fide* holder of the note for value and without notice, there was to be a new trial. If the ruling of the judge was wrong and this court should be of the opinion that there was no sufficient evidence upon which the jury could find that the plaintiff was not a *bona fide* holder of the note for value and without notice, judgment was to be entered for the plaintiff in such sum as it might be entitled to recover against the defendant upon the pleadings and under the terms of the report.

*L. M. Friedman,* (*R. Dow* with him,) for the plaintiff.

*F. G. Cook,* for the defendant.

KNOWLTON, C. J. This is an action upon a promissory note, against a charitable corporation. The note was signed by the corporation's president and treasurer. As officers of such a cor-

poration, they had no right to make a note without special authority, and on its face the note does not purport to bind the corporation, without proof of their authority to sign it. *Packard* v. *Universalist Society,* 10 Met. 427. *Dedham Institution for Savings* v. *Slack,* 6 Cush. 408.   *Craft* v. *South Boston Railroad,* 150 Mass. 207.   *Merchants' National Bank of Gardiner* v. *Citizens' Gas Light Co.* 159 Mass. 505.   *Jewett* v. *West Somerville Cooperative Bank,* 173 Mass. 54.   *Slattery* v. *North End Savings Bank,* 175 Mass. 380.

The vote at the meeting of the trustees did not authorize these officers to make this note.   It recited certain terms upon which the real estate had been offered, calling for payment in part by giving certain notes and mortgages, and it purported to authorize the president and treasurer to " execute and sign the necessary papers."   The note in suit is not included among these papers. But even more fundamentally, the meeting could give no authority to purchase, lease, or sell real estate, because the by-laws of the corporation require the presence of two thirds of the whole number of trustees to transact that kind of business, and at this meeting only eight of the fifteen trustees were present. Upon the undisputed facts, therefore, the note sued on was not the note of the corporation and no action can be maintained on it, even by a holder in due course, unless the corporation by its subsequent conduct has created a liability upon it.

The plaintiff contends that the defendant has ratified it as a binding note, or has become estopped to deny its validity.   The defendant has had no dealings or relations with Mitchell, the payee, which, in connection with its subsequent conduct, amount to a ratification in his favor, or estop it to deny the validity of the note as against him.

Mitchell acted as the agent of the defendant in negotiating a purchase of real estate.   He falsely represented the price at which the owner would sell the property, at $2,000 more than it really was.   This note of that amount was to reimburse him for a payment of that sum, which he represented that he had made to the owner.   In fact, he made no such payment and the note was without consideration.   The officers of the corporation did not ascertain the facts until long after the purchase had been completed, and they had entered into possession of the real

estate. The question is whether the retention of the real estate by the corporation is evidence of a ratification of the note, or of an estoppel against the corporation from denying its validity.

Suppose that the officers ascertained all the facts. Was the corporation bound to give up all the real estate, or ratify this note given without authority? The argument is that a retention of the real estate was inconsistent with a refusal to pay this note. But the defendant did not receive the real estate from Mitchell. It had no dealings with him as a party to the contract whereby it obtained the real estate. His only relation to that transaction was as the agent of the defendant in negotiating for a purchase. The giving of the note was a separate transaction to compensate the payee for a pretended payment. To this note the corporation had three different defenses, — one that it was obtained by fraud, one that it was without consideration, and one that it was not made by the defendant. The first two of these defenses would not avail it as against a holder in due course, but the last is effectual against anybody. As to this, a ratification by the corporation of the transaction conducted by its officers, between it and the former owner of the real estate, whereby it acquired its title, was not inconsistent with a refusal to ratify a merely collateral transaction whereby these officers undertook to borrow $2,000 from Mitchell, and to give him a note and mortgage from the corporation to secure payment of the loan. The corporation and its officers, upon learning all the facts, well might say: We ratify the transaction of our representatives with the former owner of the property, whereby the land was acquired; but we decline to ratify their action in giving a note to our fraudulent agent, which did not enter into the transaction with the former owner from whom we obtained our property.

We are of opinion that there is no evidence of ratification by the corporation, of the giving of this note, much less is there any estoppel against it.

*Judgment on the verdict.*